**210**

In re FOLDING CARTON ANTITRUST LITIGATION.

**This Document Relates to all Remaining Opt–Out Cases.**

**MDL No. 250.**

United States District Court, N. D. Illinois, E. D.

Oct. 14, 1980.

---

John J. McHugh, Donald G. Kempf, Jr., Chicago, Ill., for defendants.

Francis J. McConnell, Edward F. Ruberry, William R. Jansen, Chicago, Ill., for plaintiff Pillsbury Co.; McConnell & Campbell, Chicago, Ill., of counsel.

Lee A. Freeman, Sr., Chicago, Ill., for plaintiffs, Kraft, Inc. and Sun–Maid Raisin Growers; Lee A. Freeman, Sr., Jerrod E. Salzman, John F. Kinney, Freeman, Rothe, Freeman & Salzman, Chicago, Ill., Robert G. Johnson, Howard Hoosin, Glenview, Ill., Barry F. Kriebel, Fresno, Cal., of counsel.

PRETRIAL ORDER NO. 79

MEMORANDUM AND ORDER

ROBSON and WILL, Senior District Judges.

More than eighty private treble damage suits were filed against the defendants alleging a price–fixing conspiracy by sellers in the folding carton industry in violation of the antitrust laws. By an order of the Judicial Panel on Multidistrict Litigation, those civil actions were transferred to this Court for consolidated pretrial proceedings under the caption "In re Folding Carton Antitrust Litigation." In July 1977, we certified a class consisting of "[a]ll persons in the United States (excluding defendants, their subsidiaries, affiliates, or agents), who purchased folding cartons from any of the defendants in these actions during the period from January 1, 1960 to December 31, 1974." Fourteen plaintiffs opted–out from the class and so were not included in defendants' settlement with class members. Defendants have filed a motion in limine to preclude the remaining opt–outs from presenting at trial evidence pertaining to the class from which those plaintiffs opted–out. For the reasons hereinafter stated, we deny the motion.

The class action evidence which defendants seek to exclude presumably would tend to prove that there was a nationwide, price–fixing conspiracy between the defendants against purchasers of folding cartons from defendants. Opt–out plaintiffs are purchasers of folding cartons from defendants. Therefore, the class evidence of a price–fixing conspiracy is also relevant to the opt–outs' proof of a price–fixing conspiracy.

Defendants mistakenly rely in part on a previously rejected argument to support their motion in limine. They contend that "[b]ecause folding cartons are [a customized item] not a stock or commodity item like sugar or wheat, proof of a general practice among defendants to exchange prices with respect to particular purchasers would not advance the opt–outs' case." We have already considered that argument, however,

and held that the nature of the folding carton market does not preclude the possibility of an overall conspiracy. *In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 733–34 (N.D.Ill.1977). An overall conspiracy would necessarily have included opt–outs as well as class members, so evidence of a conspiracy against all purchasers including the class is relevant to any case involving an alleged conspiracy against the opt–outs.

Defendants also urge that the opt–outs' statements that their cases are "not comparable" to the class action warrant exclusion of evidence as to the overall conspiracy. The opt–outs have argued the distinction between their cases and the class action primarily as a matter of additional evidence as to liability and amount of damages. Even allegations of a "special conspiracy" against Pillsbury do not mean that Pillsbury may not also have been affected by the alleged general conspiracy. The cases are clearly basically comparable. All are antitrust suits alleging a price–fixing conspiracy by the same defendants in the same industry. Although the proof in the opt–outs' cases undoubtedly will not be identical to that of the class action, to the extent that it will overlap, the opt–outs are entitled to use any of the class evidence which has "any tendency to make the existence" of the similar elements of the cases "more probable ... than it would be without the evidence." Fed.R.Evid. 401.

We cannot make a blanket ruling on the admissibility of evidence not yet before us. To do so would only complicate any ultimate trial. While some of the class evidence may be irrelevant to the opt–outs' cases, that will be determinable only when, if ever, it is offered.

Nor will denying defendants' motion in limine destroy the class action device. Defendants argue that

> [i]f opt–out plaintiffs may without restriction use the fruit of class efforts, then there will be very little incentive for potential opt–outs even to remain in the class or for defendants to settle a class action upon which opt–outs may never-

theless coattail for evidence, and the judicial goals of efficiency and fairness sought by Rule 23 will necessarily be lost.

It is not likely that "coattailing" will be such a cheap, effective, and complete method of trial preparation that potential class members will be tempted to opt–out and proceed by themselves, except in cases where the amount of potential damages and the financial capacity of the litigant to proceed alone justify opting–out without regard to use of class evidence. Rule 23 was not primarily intended for such cases, but rather to enable less affluent claimants with modest claims to join together to pursue them. Furthermore, it would be unfair to exclude relevant evidence so as to punish those who exercise their right to opt–out. Such a course would be particularly inappropriate in this case where opt–outs are not simply coattailing but have participated in every stage of the discovery and other aspects of the class action.

For the reasons stated above, defendants' motion in limine is denied.